COOLEY GODWARD KRONISH LLP
GREGORY C. TENHOFF (154553)
LISA BARNETT SWEEN (191155)
ELIZA HOARD (238276)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  (650) 843-5000
Facsimile:  (650) 849-7400

Attorneys for Defendants
VAXGEN, INC. and LISA BROOKS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARIA RAZBAN,<br><br>    Plaintiff,<br><br>v.<br><br>VAXGEN, INC., a Delaware corporation, LISA BROOKS, and DOES 1 through 50, inclusive,<br><br>    Defendants. | No. C 07-03136 JL<br><br>DEFENDANTS VAXGEN, INC. AND LISA BROOKS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR UNOPPOSED MOTION TO COMPEL INDEPENDENT MENTAL EXAMINATION OF PLAINTIFF ARIA RAZBAN PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 35<br><br>Complaint Filed:     January 19, 2007<br>First Am. Complt. Filed:   May 16, 2007<br>First Am. Complt. Served:   June 1, 2007<br>Trial Date:          Not Yet Set |

## I. INTRODUCTION.

In this lawsuit, Plaintiff Aria Razban ("Plaintiff") alleges that her former employer, Defendant VaxGen, Inc. ("VaxGen") and her former supervisor, Defendant Lisa Brooks (collectively, "Defendants"), harassed and discriminated against her on the basis of her alleged mental and physical disabilities (post traumatic stress disorder ("PTSD"), depression and thyroid condition), and retaliated against her in violation of the Fair Employment and Housing Act ("FEHA"). Plaintiff also alleges that VaxGen's refusal to grant her request for an extension of a non-statutory, personal leave of absence, after she failed to return to work on the date this leave expired, was a violation of the federal Family Medical Leave Act ("FMLA") and California

Family Rights Act ("CFRA"). Plaintiff also alleges that as a result of this alleged conduct, she has suffered, and continues to suffer, severe ongoing emotional distress. Because good cause exists to permit Defendants to test the veracity of Plaintiff's allegations regarding the extent of her severe and on-going emotional distress, and because Plaintiff has stipulated not to oppose this motion, Defendants seek an order from the Court to compel Plaintiff to submit to an independent mental examination ("IME") in accordance with Rule 35 of the Federal Rules of Civil Procedure.

Good cause exists to permit a mental examination of Plaintiff because she has, by her allegations of pre-existing mental disabilities, and severe and on-going emotional distress, put her mental condition in controversy. If Defendants are deprived of the opportunity to explore the nature and extent of Plaintiff's alleged disabilities and emotional distress, which she claims she has suffered, *and continues to suffer*, as result of her employment with VaxGen, Defendants will not be able to determine the extent to which Plaintiff's alleged damages may be attributable to other pre-existing and/or concurrent factors, nor will they be able to determine the extent of such alleged injuries.

Moreover, Plaintiff has stipulated not to oppose this motion to compel Plaintiff's IME. (Declaration of Lisa Barnett Sween in support of Defendants' Unopposed Motion to Compel Independent Mental Examination Re: Aria Razban ("Sween Decl."), ¶ 9, Ex. G.) Accordingly, Defendants request that the Court grant their unopposed motion for an IME.

## II.   STATEMENT OF RELEVANT FACTS.

### A.   Plaintiff Alleges Severe And Ongoing Emotional Distress.

#### 1.   The Complaint.

On May 16, 2007, Plaintiff filed a First Amended Complaint (the "Complaint") against Defendants asserting the following claims: (1) disability discrimination and harassment under the California Fair Employment & Housing Act ("FEHA"); (2) retaliation under FEHA; (3) violation of Federal Family & Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA"); (4) violation of California Whistleblower Act (Labor Code §§ 98.6 and 1102.5); (5) wrongful termination in violation of public policy; and (6) intentional and negligent infliction of emotional distress. (Declaration of Lisa Barnett Sween ("Sween Decl."), ¶ 3, Ex. A ("Complaint").

Plaintiff alleges, among other things, that she was harassed and discriminated against based upon her alleged physical and mental disabilities (thyroid condition, PTSD and depression) and that she was wrongfully terminated rather than being provided with additional time off as a reasonable accommodation.

As set forth in the Complaint, Plaintiff repeatedly claims that Defendants' alleged conduct caused her to suffer "severe emotional distress, anxiety, shock and humiliation . . . ." (Complaint, ¶¶ 15, 26, 59 and 61.) Specifically, in paragraph 26 of the Complaint, Plaintiff alleges that she "suffered extreme emotional distress, shock, humiliation, anxiety, nervousness, and depression as a result of Defendants' outrageous, malicious and intentional conduct . . ." and that her "health was impaired to the point where she was partially disabled physically and mentally as a result of Defendants' actions." (Complaint, ¶ 26.) Further, Plaintiff alleges that Defendants' conduct caused her medical conditions to worsen (Complaint, ¶¶ 14, 15, 18, and 26), and caused "among other things, rapid weight gain, crying at work, and severe emotional distress for Plaintiff." (Complaint, ¶ 15.) Plaintiff also prays for a monetary judgment "of at least $650,000 and in an amount to be determined according to proof" for "all compensatory and consequential damages." (Complaint, Prayer for Relief, ¶ 1.)

### B.    Plaintiff's Sworn Deposition Testimony.

In the first two sessions of her deposition, Plaintiff described how symptoms associated with her alleged mental disabilities affected her life. When questioned about her alleged depression, she stated, "I was grieving so I did not enjoy social gatherings with a lot of people . . . I spent less time spending with my friends going out . . . I think I became withdrawn . . . I am sure there were other things." (*See* November 19, 2007 Deposition of Aria Razban (attached to Sween Decl., ¶ 5, Ex. C ("November 2007 Razban Deposition"), 44:13-45:25.) Plaintiff also testified regarding the severity of her emotional distress. She stated, "I remember once I was working out with [another employee]. And I was crying, and I was saying that I am being harassed, and I am overwhelmed. It was too much for me to take with everything going on." (*See* January 16, 2008 Deposition of Aria Razban (attached to Sween Decl., ¶ 7, Ex. F ("January 2008 Razban Deposition"), 235:17-237:7.)

### C. Plaintiff Currently Is Undergoing Medical Treatment for Alleged Emotional Distress Injuries.

Plaintiff is currently undergoing treatment with a healthcare provider for her alleged emotional distress symptoms. (Sween Decl., Exs. D and E.) It is without question that Plaintiff will argue to the jury (as she has alleged in the Complaint) that she is entitled to hundreds of thousands of dollars in compensation for her purported emotional distress attributable to Defendants. It is very likely she will call at trial an expert or a treating healthcare provider in support of this claim. It is for these reasons that Defendants must be permitted to explore Plaintiff's emotional distress claims in an IME, as contemplated and authorized by Rule 35.

### D. The Parameters Proposed For The IME Are Standard In The Industry And Particularly Reasonable For This Case.

If permitted, the IME will consist of two parts: The first portion of the examination will include a brief interview and thereafter psychometric testing administered by Dr. Dale McNiel at his offices in San Francisco. (Declaration of Renee L. Binder, M.D. ("Binder Decl."), ¶ 5.) The second portion of the examination will include a separate and more detailed interview and thereafter non-intrusive psychometric testing, administered under the direction of Renee L. Binder, M.D., a board-certified psychiatrist affiliated with the University of California, San Francisco, at Dr. Binder's offices in San Francisco. (Binder Decl., ¶ 4.) During these examinations, Plaintiff will be permitted a lunch break and other breaks as necessary. (Binder Decl., ¶ 5.)

In order to accurately assess issues of damages and causation, it is accepted practice within the field of forensic psychiatry to conduct an in-depth personal interview of the plaintiff that may last several hours. It also is standard practice for the forensic psychiatric examiner to gather detailed data from the examinee about all aspects of the person's life and experience. (Binder Decl., ¶ 4).

///

///

///

III.     ARGUMENT.

   A.     **Good Cause Exists For This Court To Compel An IME Because Plaintiff Has Put Her Mental State Squarely In Controversy.**

Rule 35(a) of the Federal Rules of Civil Procedure permits a mental examination of a party in any action in which the mental condition of that party is placed in controversy. Leave to conduct such an examination may be granted by the court provided good cause is shown by the party seeking the examination. 28 U.S.C. § 35(a); *Schlagenhauf v. Holder,* 379 U.S. 104, 106 (1964).

Good cause exists to compel a plaintiff to submit to a mental evaluation where the plaintiff puts her mental condition "in controversy." *Schlagenhauf,* 379 U.S. at 106; *Wilson v. Dalton,* 24 Fed. Appx. 777, 779 (9th Cir. 2001); *Herrera v. Lufkin Industries,* 474 F.3d 675, 689 (10th Cir. 2007). Pleadings often are sufficient to establish that the "in controversy" and good cause requirements exist under Rule 35. *Massey v. Manitowoc Co. Inc.,* 101 F.R.D. 304, 306 (E.D. Penn. 1983) (discussing the Supreme Court's holding in *Schlagenhauf,* 379 U.S. at 119); *Ragge v. MCA/Universal Studios,* 165 F.R.D. 605, 607, 609 (C.D. Cal. 1995) (plaintiff alleged she "suffered, and continues to suffer, humiliation, embarrassment, and mental and emotional distress and discomfort," thus placing her mental condition "in controversy"); *Wilson,* 24 Fed. Appx. at 777 (plaintiff alleged "severe emotional distress and mental anguish" in his complaint, thus placing his mental condition "in controversy"); *Gabriel v. Johanns,* 2007 WL 4170635, *2 (E.D. Cal. 2007) (plaintiff put mental state "in controversy" by making "express allegations that she incurred extreme and lasting mental and emotional suffering).

Plaintiff's allegations of ongoing emotional injury satisfy the "in controversy" and "good cause" requirements. The Complaint continuously refers to the extreme emotional distress Plaintiff has allegedly suffered *and continues to suffer,* and for which she seeks damages. Throughout her Complaint, Plaintiff alleges that she "suffered extreme emotional distress, shock, humiliation, anxiety, nervousness, and depression as a result of Defendants' outrageous, malicious and intentional conduct . . ." and that she sustained "severe emotional distress, anxiety, shock and humiliation . . ." (Complaint, ¶ 61.) Moreover, Plaintiff alleges that this emotional

injury is ongoing as she also alleges that "mental and emotional distress . . . has interfered with Plaintiff's ability to lead a normal life." (Complaint, ¶ 27.)[1]

Courts also have held that a plaintiff places his or her mental condition "in controversy" by pleading and choosing to pursue separate causes of action for intentional infliction of emotional distress and/or negligent infliction of emotional distress. *See, Turner v. Imperial Stores*, 161 F.R.D. 89, 92–97 (S.D. CA 1995); *Bowen v. Parking Authority of City of Camden*, 214 F.R.D. 188, 194 (D N.J. 2003); and *Roberson v. Bair*, 242 F.R.D. 130, 136–138 (D D.C. 2007). Plaintiff has alleged separate causes of action for intentional and negligent infliction of emotional distress based on Defendants' alleged conduct. (Complaint, ¶¶ 58-61.) In addition, a plaintiff puts his or her mental condition "in controversy" by seeking compensation for emotional distress resulting from a defendant's acts. *Schlagenhauf*, 379 U.S. at 119; *Anson v. Fickel*, 110 F.R.D. 184, 185 (N.D. Ind. 1986); *Gabriel*, 2007 WL 4170635 at *2. Here, Plaintiff seeks a minimum of $650,000 in alleged compensatory damages. (Complaint, Prayer for Relief, ¶ 1.) Therefore, through Plaintiff's pleadings alone, her mental condition is "in controversy" in this matter.

In addition to her allegations and causes of action, Plaintiff's own sworn deposition testimony places her mental condition in controversy. In multiple instances, Plaintiff testified that she suffered mental injuries while working for VaxGen and with Ms. Brooks. (*See, e.g.*, November 2007 Razban Deposition, 44:13-45:25 and January 2008 Razban Deposition, 235:17-237:7.) Moreover, Plaintiff's counsel has informed Defendants' counsel that Plaintiff currently is treating with a psychiatrist for her alleged emotional distress. (Sween Decl., Exs. D and E.) That psychiatrist apparently attributes physical symptoms to Plaintiff's alleged emotional distress in the form of "severe exacerbation of her asthma." (Sween Decl., Exs. D and E.)

As a result of her allegations in the pleadings, her causes of action, her own sworn deposition testimony, and the fact that she is currently seeking treatment for her alleged emotional distress, Plaintiff's mental condition is squarely "in controversy." Consequently, Plaintiff must

---

[1] The Complaint is not the only pleading in which Plaintiff places her mental condition in controversy. In Plaintiff's Initial Disclosures, she alleges an unknown amount of damages in connection with her claimed emotional distress. (§ 3(c)--"General damages for emotional distress.") (Sween Decl., ¶ 4, Ex. B.)

be compelled to submit to an IME because it is certain that she will ask the jury to award her substantial damages to compensate her for her alleged emotional distress and physical ailments that have allegedly arisen as a result of the conduct alleged in the Complaint.

### B. Good Cause Exists Because Defendants Are Unable To Obtain The Information Elsewhere.

Good cause exists to obtain a mental examination when a plaintiff's allegations show the need for information and there is a lack of means for obtaining it elsewhere. *Schlagenhauf*, 379 U.S. at 114-122. This is because "[o]ne of the purposes of Rule 35 is to 'level the playing field' between parties in cases in which a party's physical or mental condition is in issue." *Ragge*, 165 F.R.D. at 607 (quoting, *Tomlin v. Holecek*, 150 F.R.D. 628, 633 (D. Minn. 1993)); *Smedley v. Capps, Staples, Ward, Hastings and Dodson*, 820 F. Supp. 1227, 1232 (N.D. Cal. 1993)(court ordered an IME for a plaintiff seeking to present evidence of "normal" emotional distress); *Rodriguez v. Merez*, 1007 WL 2850655 (E.D. Cal. 2007)(F.R.C.P. 35 "is aimed at allowing an adverse party to evaluate a party's claims of injury, illness, incapacity, etc."). Without the opportunity to conduct an IME, Defendants have no way to investigate and test the truthfulness of Plaintiff's claims of severe and ongoing mental distress, for which she is currently seeking treatment, or to explore the appropriateness and effectiveness of her current treatment regimen. (Sween Decl., ¶ 8.) Consequently, Defendants require an IME in order to level the playing field.

### C. To Deny This Discovery Would Be To Deny Defendants' Right To Due Process Of Law.

It is a basic principle of procedural due process that a defendant is given an adequate opportunity to defend against civil claims brought against it in court. As the Supreme Court declared in *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951), "the right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." In fact, one of the essential requirements of due process is an opportunity to be fully heard, which includes the ability for a party to respond. *See, e.g., Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). This fundamental notion of fairness allows a party to tell its side of the

story before a court or other entity decides its fate. *Hammontree v. City of Needles*, 185 F.3d 866, *2 (9th Cir. 1999)(unpublished opinion). Moreover, in the specific context of compelling a mental examination, courts have held that a defendant has the right to respond to a plaintiff's allegations by conducting such an examination. *See, e.g., Gabriel*, 2007 WL 4170635 at *2 ("the defendant must respond to the [plaintiff's] allegations and is entitled to conduct a professional examination of plaintiff, including the taking of a careful and detailed history of her symptoms, past stressors and treatment, to determine the extent of the alleged injuries, and whether other factors may have attributed to or exacerbated them").

In this case, the examination Defendants seek will be carefully tailored to test Plaintiff's theory of mental injury and causation by identifying possible alternative stressors that may be responsible for her alleged mental and physical conditions, as well as to test the extent of the severe and ongoing emotional distress she claims to suffer. Without the opportunity to conduct such an examination, Defendants' ability to refute Plaintiff's emotional distress claims at trial will be greatly impaired, depriving Defendants of their right to due process of law.

### D.  The Examination That Defendants Seek Is Appropriate.

Rule 35 allows for mental examinations, without regard to the length of time for such examinations or which tests are administered. F.R.C.P. 35. Here, the examination Defendants seek will be structured to test the extent and nature of Plaintiff's alleged emotional distress, as well as whether she has experienced any environmental or psychological factors which would contribute to her emotional distress. In order to accurately assess issues of damages and causation, it is accepted practice within the field of forensic psychiatry to conduct an in-depth personal interview of the plaintiff that may last several hours. It is standard practice for the forensic psychiatric examiner to gather detailed data from the examinee about all aspects of the person's life and experience. (Binder Decl., ¶ 4.)

Plaintiff cannot plausibly argue that Defendants' request for the IME is unreasonable given that she has stipulated to this motion (Sween Decl., ¶ 9, Ex. G), and has squarely placed her mental state in issue by: (1) alleging severe physical and emotional injuries in the Complaint (*see, supra*, Section II.A.1.); (2) testifying that she suffers ongoing severe emotional distress

attributable to Defendants' conduct (*see*, *supra*, Section II.B.); and (3) continuing to undergo treatment for symptoms allegedly caused by this emotional distress (*see*, *supra*, Section II.C; Sween Decl., Exs. D and E).

Further, Plaintiff presumably will adduce an expert witness of her own on this issue. Defendants are therefore entitled to have their own expert conduct an IME. If Plaintiff objects to having an IME performed, chooses not to cooperate with the IME or fails to complete the IME, her option is to withdraw the emotional distress allegations from this case by written confirmation. However, if she chooses to pursue these claims, the IME is required because it will likely lead to the discovery of admissible evidence.

## III. CONCLUSION

As the Complaint and Plaintiff's sworn deposition testimony make clear, Plaintiff insists that Defendants caused her severe mental distress and related physical symptoms. She also claims that this suffering is ongoing, as evidenced by her current treatment. For the foregoing reasons, Defendants respectfully request the Court grant their unopposed motion to compel the IME of Plaintiff.

Dated: April 9, 2008

COOLEY GODWARD KRONISH LLP

By: /s/ Lisa Barnett Sween
Lisa Barnett Sween

Attorneys for Defendants
VAXGEN, INC. and LISA BROOKS

1080834/SF